**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| Andrew Gladue and Beatrice Vivier, | ) | |
| | ) | |
| Plaintiffs, | ) | **ORDER GRANTING DEFENDANT'S** |
| | ) | **MOTION FOR SUMMARY** |
| | ) | **JUDGMENT** |
| vs. | ) | |
| | ) | |
| United States of America, | ) | Case No. 4:07-cv-069 |
| | ) | |
| Defendant. | ) | |

_____

Before the Court is the Government's motion for summary judgment filed on March 30, 2009. See Docket No. 11. The Plaintiffs filed a response in opposition to the motion on May 15, 2009. See Docket No. 22. The Government filed a reply brief on May 20, 2009. See Docket No. 23. The Court grants the motion for the reasons set forth below.

**I.      BACKGROUND**

The plaintiffs, Andrew Gladue and Beatrice Vivier, are enrolled members of the Turtle Mountain Band of Chippewa Indians and reside in Dunseith, North Dakota. Gladue and Vivier own fee land in Rolette County, North Dakota at SW1/4SW1/4 Section 26, Township 162 North, Range 72 West.

On June 29, 1999, the Bureau of Indian Affairs (BIA) contracted with Flickertail Paving & Supply, LLC (Flickertail) to establish a gravel pit in Rolette County, North Dakota at NW1/4SW1/4 Section 26, Township 162 North, Range 72 West, which is tribal land within the Turtle Mountain Indian Reservation and adjacent to the Plaintiffs' land. Flickertail was retained to crush and stockpile 175,000 metric tons of surface coarse aggregate. See Docket No. 14-3, p. 6.

Before beginning the gravel pit project, Flickertail realized that it did not have a stockpile site for the gravel. On August 30, 1999, after Flickertail was unable to negotiate the use of the Plaintiffs' land as a stockpile site, Flickertail informed the BIA that the gravel pit project had been delayed because it did not have access to a stockpile site and that it would have to move to a different location. See Docket No. 15-5. Flickertail then decided that it could establish a gravel pit at the original location by using conveyor belts to stockpile the gravel uphill from where it was being mined.

At some point in 1999, a neighbor informed Andrew Gladue that there was gravel stockpiled on the Plaintiffs' land. Gladue discovered a stockpile of gravel, downed trees, a damaged fence, and that the land had been "bladed." See Docket No. 14-2, pp. 4-5. Gladue noticed workers on the adjacent tribal land but did not know who they were or for whom they worked. Gladue also noticed a worker on the Plaintiffs' land but did not recognize him and did not know for whom he worked. See Docket No. 14-2, p. 5. Gladue informed the Rolette County Sheriff that someone was on the Plaintiffs' property. After the Rolette County Sheriff spoke with BIA employees Ken Davis, Raymond Keplin, and Lyle Warren, the three men visited Gladue and apologized. They then offered Gladue "$5,000 to forget everything." See Docket No. 14-2, p. 5. Within two days, the gravel that had been stockpiled on the Plaintiffs' land was gone.

On June 8, 2000, Gladue filed a Federal Tort Claims Act claim with the BIA for $20,000 in property damages. Gladue argued that the "BIA wrongfully excavated [his] real estate being in Section 26, Township 162 North, Range 72 West, Rolette County, North Dakota. This wrongful excavation caused material and aesthetic damage to [the] property, greatly depreciating the value thereof." See Docket No. 15-2. The claim was forwarded to the United States Department of the

Interior for an administrative determination. The Department of the Interior added Jason Vivier as a claimant because he owned the land with Gladue at the time of the claim. Jason Vivier later conveyed his interest in the land to Beatrice Vivier. On March 9, 2007, the Department of the Interior awarded $275.00 to Gladue and Jason Vivier after finding "that in the fall of 1999 the BIA caused the surface disturbance of 2.1 acres of [their] land while constructing a gravel pit on appurtenant land. The cost to repair the surface disturbance exceeds the value of [the] land" which was valued between $125.00 and $150.00 an acre. See Docket No. 14-5. Gladue and Jason Vivier were given forty-five days to accept the award and were informed that if they did not accept it within the time period, the claim would be administratively denied. Gladue and Jason Vivier also were informed that they had six months to request reconsideration of the award or to file suit in United States District Court.

Gladue and Jason Vivier requested reconsideration of the award on April 20, 2007, and raised the amount of property damages claimed to $38,224.88. On June 28, 2007, the Department of the Interior awarded Gladue and Jason Vivier $275.00 for land damage and $117.38 for fence damage, for a total of $392.38. They were informed of their right to accept the award within forty-five days or to file suit in United States District Court within six months. The Department of the Interior denied the claim on August 12, 2007, after the award was not accepted within forty-five days.

On October 15, 2007, the Plaintiffs filed a complaint pursuant to the Federal Tort Claims Act. See Docket No. 1. The Plaintiffs contend that the BIA "entered into Plaintiffs' property without their consent and excavated the property causing damage to timber, trees, underwood, landscape, forage, fencing, and trees." See Docket No. 1 (errors in original). "The carelessness,

3

recklessness, and negligence of the [Government] depreciated the value of the land" and "caused Plaintiff[s] emotional distress and despair" because the land "was of sentimental value as it was inherited from a family member." See Docket No. 1.

On March 30, 2009, the Government filed a motion for summary judgment. See Docket No. 11. The Government argues that if the Plaintiffs' land was damaged, it was damaged by Flickertail and not by the BIA. The Government contends that Flickertail was an independent contractor and, therefore, the Government is not liable for any negligence by Flickertail. The Government also contends that the BIA did not owe a duty to protect the Plaintiffs' land and that the BIA did not trespass on the Plaintiffs' land.

The Plaintiffs contend that "the BIA controlled the physical performance of where material was stockpiled and thus is liable for the negligent placement of the material on the Gladue property and the damage caused by the stockpiling of material." See Docket No. 22. "Additionally, the Department of the Interior has already determined that it is responsible for the damage. This is an admission by the BIA that it is responsible for the damage to the Gladue property." See Docket No. 22 (internal citation omitted). The Plaintiffs contend that "the BIA had a duty not to go on the plaintiff[s'] property without their permission." See Docket No. 22.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates no genuine issues of material fact exist and, therefore, the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(c). Summary judgment is not appropriate if there are factual

4

disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id.

The Court must inquire whether the evidence presents sufficient disagreement to require the submission of the case to a jury or if it is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party first has the burden of demonstrating an absence of genuine issues of material fact. Simpson v. Des Moines Water Works, 425 F.3d 538, 541 (8th Cir. 2005). The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### III.   LEGAL DISCUSSION

"The United States, as a sovereign, is immune from suit unless it waives its immunity and consents to be sued." Smith ex rel. Fitzsimmons v. United States, 496 F. Supp. 2d 1035, 1038 (D.N.D. 2007) (citing United States v. Dalm, 494 U.S. 596, 608 (1990)). The Plaintiffs' claim is brought pursuant to the Federal Tort Claims Act, under which the Government has waived its sovereign immunity and is liable for money damages to the following extent:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). 28 U.S.C. § 2671 contains the following definitions:

> As used in this chapter and sections 1346(b) and 2401(b) of this title, the term "Federal agency" includes the executive departments, the judicial and legislative

>   branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States.
>
>   "Employee of the government" includes . . . officers or employees of any federal agency . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation . . . .

The Federal Tort Claims Act "is to be narrowly construed against waivers of sovereign immunity . . . ." Berkman v. United States, 957 F.2d 108, 113 (4th Cir. 1992) (citing United States v. Orleans, 425 U.S. 807, 813-14 (1976)).

### A.     FLICKERTAIL'S ALLEGED NEGLIGENCE

Although not entirely clear from the Plaintiffs' pleadings, it appears the Plaintiffs first argue that the Government is liable for Flickertail's negligence in stockpiling gravel on the Plaintiffs' land. The Federal Tort Claims Act makes the Government liable for the torts of its employees. 28 U.S.C. § 1346(b)(1). "On the other hand, the United States is not responsible for the torts of government contractors." Knudsen v. United States, 254 F.3d 747, 750 (8th Cir. 2001) (citing 28 U.S.C. § 2671). For the Government to be liable under the Federal Tort Claims Act for Flickertail's alleged negligence, the Plaintiffs must show that Flickertail's employees had transformed into employees of the government when they allegedly stockpiled gravel on the Plaintiffs' land and caused damage to the land.

"To determine whether an individual is an employee or contractor, the court must evaluate the extent to which the government has the power to supervise the individual's day-to-day operations." Knudsen, 254 F.3d at 750 (citing Orleans, 425 U.S. at 814). "Courts interpreting the statute have held that, in some instances, the government may exercise such pervasive control over

6

the work done by the employees of an independent contractor as to transform those employees essentially into government employees for purposes of the" Federal Tort Claims Act. Kirchman v. United States, 8 F.3d 1273, 1275 (8th Cir. 1993). "The crucial element in determining whether an individual may be considered a federal employee is the amount of control the federal government has over the physical performance of the individual." Charlima, Inc. v. United States, 873 F.2d 1078, 1080-81 (8th Cir. 1989) (citing Orleans, 425 U.S. at 814-15; Logue v. United States, 412 U.S. 521, 528 (1973)).

The Plaintiffs contend that Flickertail's employees became employees of the Bureau of Indian Affairs because the BIA determined the locations of the stockpile sites, and obtained permits and permission to stockpile the gravel. The Plaintiffs contend that because "the BIA controlled the physical performance of where material was stockpiled," it "is liable for the negligent placement of the material on the [Plaintiffs'] property and the damage caused by the stockpiling of material." See Docket No. 22.

The BIA is not in the business of crushing and stockpiling gravel. For this reason, the BIA retained Flickertail to perform the crushing and stockpiling of gravel and exerted minimal oversight over Flickertail's work. The BIA had neither day-to-day contact with, nor control over, Flickertail as Flickertail worked on the gravel pit project. There were no daily inspections of Flickertail's work and the parties' contract did not provide for the BIA to control Flickertail's daily work. Instead, the BIA only retained the right to conduct inspections and to test services. See Charlima, Inc., 873 F.2d at 1081 (holding that the government's promulgated specific regulations governing an inspection process did not establish the Federal Aviation Administration's power to control the day-to-day inspection duties of a designated airworthiness representative); Berkman, 957 F.2d at 113-14

7

("While we agree with Berkman that the government contracted for the right periodically to inspect Arrow General's performance and ensure that the services provided were in compliance with the terms of the contract, this does not amount to the government having day-to-day physical control of Arrow General's operations."). The BIA conducted an inspection on September 2, 1999, and conducted an inspection when Flickertail had completed the project.

In the contract, Flickertail is referred to as a "Contractor." Randy Silbaugh, the BIA's contracting officer's representative at the time, testified at a deposition that his only contact with Flickertail was a preconstruction conference and occasional telephone conversations. The preconstruction conference was the only time Silbaugh met with Flickertail's representatives in person. See Docket No. 14-3, p. 6.

Contrary to the Plaintiffs' contention, merely determining the locations of potential stockpile sites does not rise to the level of "pervasive control" necessary to transform Flickertail's employees into employees of the government for purposes of the Federal Tort Claims Act. The determination of potential stockpile sites was a one-time occurrence that took place before work was done on the project. The BIA did not perform daily inspections to ensure the stockpile site was at the agreed-upon location. The BIA exerted no control over the daily physical performance of how Flickertail excavated and stockpiled gravel. The BIA only inspected the project to ensure compliance with the contract.

The Plaintiffs have failed to present any evidence that Flickertail employees negligently stockpiled gravel on their land. Nonetheless, assuming that Flickertail's employees were responsible for stockpiling gravel on the Plaintiffs' land and causing damage to the land, the Court finds that the BIA did not exert such pervasive control over Flickertail's employees that they became employees

of the government. Instead, those employees remained the employees of Flickertail, an independent contractor of the BIA. Because Flickertail was an independent contractor of the BIA, the Government is not liable to the Plaintiffs for any negligence that may have been committed by Flickertail.

### B.     BIA'S ALLEGED NEGLIGENCE AND TRESPASS

The Plaintiffs' main contention is that the Bureau of Indian Affairs is directly liable under the Federal Tort Claims Act for negligently damaging the Plaintiffs' land and for trespassing on the Plaintiffs' land. Although the Court has found that the Government is not liable for any alleged negligence by Flickertail, that finding does not resolve the Plaintiffs' claim that the BIA was directly liable. For the Government to be liable, employees of the BIA must have committed torts against the Plaintiffs.

Pursuant to 28 U.S.C. § 1346(b)(1), the Government is liable for the torts of its employees "in accordance with the law of the place where the act or omission occurred." It is well-established that the reference to "law of the place" found in 28 U.S.C. § 1346(b)(1) "means law of the State-the source of substantive liability" under the Federal Tort Claims Act. F.D.I.C. v. Meyer, 510 U.S. 471, 478 (1994) (citing Miree v. DeKalb County, 433 U.S. 25, 29, n. 4 (1977); United States v. Muniz, 374 U.S. 150, 153 (1963)). The parties are in agreement that North Dakota state law governs the alleged negligence and trespass of the BIA's employees.

### 1) **NEGLIGENCE**

The Plaintiffs contend that the Government is liable under the Federal Tort Claims Act because the BIA's employees negligently excavated and stockpiled gravel on the Plaintiffs' land. "To establish a cause of action for negligence, a plaintiff must show the defendant has a duty to protect the plaintiff from injury." Rogstad v. Dakota Gasification Co., 623 N.W.2d 382, 385 (N.D. 2001). "Negligence consists of a duty on the part of an allegedly negligent party to protect the plaintiff from injury, a failure to discharge the duty, and a resulting injury proximately caused by the breach of the duty." Grewal v. North Dakota Ass'n of Counties and Nw. Contracting, Inc., 670 N.W.2d 336, 339 (N.D. 2003).

The Plaintiffs contend that "the BIA was negligent in protecting the Plaintiffs' property." See Docket No. 22. The Plaintiffs also contend that "material was placed on the property by the BIA or at its direction." See Docket No. 22 (emphasis added). The Plaintiffs appear to argue that the Government is liable for Flickertail's alleged negligence and that the Government is liable for the BIA's alleged negligence. The Court has already found that the Government is not liable for any negligence by Flickertail. The only remaining issue regarding negligence is whether the BIA's employees negligently damaged the Plaintiffs' land.

The Plaintiffs have failed to present any evidence that the BIA's employees negligently excavated the Plaintiffs' land or stockpiled gravel on the land. Andrew Gladue acknowledged in the deposition that he did not know whether the individual he saw on the Plaintiffs' land was an employee of the BIA or Flickertail. It is incongruous to expect the Court to find that the BIA's employees negligently damaged the Plaintiffs' property when there is no evidence employees of the BIA ever stepped foot on the Plaintiffs' land or the adjacent tribal land. There is no evidence that

the BIA's employees took any part in the excavation and stockpiling of gravel. The Plaintiffs have failed to present any evidence that shows the BIA failed to discharge a duty to protect the Plaintiffs from injury or that the BIA proximately caused the resulting injury to the land. Therefore, the Court finds that the Government is not liable under the Federal Tort Claims Act for any alleged negligence by employees of the BIA.

### 2) TRESPASS

The Plaintiffs contend that the Government is directly liable under the Federal Tort Claims Act because the BIA trespassed on the Plaintiffs' land. "Civil trespass is a common law tort in North Dakota and is not statutorily defined." Tibert v. Slominski, 692 N.W.2d 133, 137 (N.D. 2005). The North Dakota Supreme Court has defined trespass as "an 'intentional harm,'" where an individual "*intentionally* and without a consensual or other privilege . . . enters land in possession of another or any part thereof or causes a thing or third person so to do." McDermott v. Sway, 50 N.W.2d 235, 240 (N.D. 1951) (emphasis in original). An individual who trespasses "is liable as a trespasser to the other irrespective of whether harm is thereby caused to any of his legally protected interests." Id.

A claim of trespass under North Dakota law requires that an individual intentionally enters another individual's land. The Plaintiffs acknowledge that the "BIA did not know where the property line was and did not survey the property." See Docket No. 22. Therefore, it appears that the Plaintiffs concede that the BIA's employees, if they entered the Plaintiffs' land at all, did not do so intentionally because they were not aware of the property line. The Plaintiffs have failed to present any evidence that any employee of the BIA was ever on their land and, even if an employee

11

of the BIA was on the Plaintiffs' land, the Plaintiffs have failed to present evidence that the employee intentionally entered the land. Therefore, the Court finds that the Government is not liable under the Federal Tort Claims Act for any alleged trespass by employees of the BIA.

## IV.     CONCLUSION

The Court finds that the Plaintiffs have failed to present evidence that raises a genuine issue of material fact as to the Government's liability for Flickertail's alleged negligence or the Government's liability for its own alleged negligence or trespass. Therefore, the Court **GRANTS** the Government's motion for summary judgment (Docket No. 11).

**IT IS SO ORDERED.**

Dated this 12th day of August, 2009.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court